and launch right into our first case, which is a Glover versus Bausch and Lomb, 20-1156-CV. And I understand that Ms. Fleischman is here for the appellate. Ms. Fleischman, can you hear us? Yes, I can. Thank you, Your Honor. And Ms. Fleischman, I understand you've been allocated 10 minutes and that you would like to reserve three minutes for rebuttal, is that right? Yes, yes, sir. Great, so what will happen is Ms. Maria, our courtroom deputy, Ms. Rodriguez will alert you orally when you have one minute remaining in your initial seven minutes. I am gonna be holding people as closely as possible to the allocated time today, so you might wanna have a timer set next to you. But again, Ms. Rodriguez will alert you when you have one minute left and when your time has expired. Okay, so with that, Ms. Fleischman, would you like to proceed? Yes, Your Honor, I would. I represent Mr. and Mrs. Glover in this product viability case that was brought under Connecticut law in the district court in the District of Connecticut. It was dismissed on a motion to dismiss after oral argument and after briefing. We asked the court to reverse the district court and send us back to amend the complaint to add the cut file claim, which is the, and to proceed against Bausch and Lomb or Bausch on the two remaining claims, which we believe are viable under the law, the negligence claim and the failure to warn claim, both based on failure to warn, the failure to report to the FDA the adverse events that have occurred, failure to file and follow the FDA's conditional approval when the FDA approved the TruLine lens. It was an inter-optic lens. At the time of approval, the TruLine lens was PMA approved subsequent to its predecessor, its predicate device, the Crystal lens. We are, unlike what the district court was concerned with, we are not attacking the labeling of the TruLine lens per se. We are not trying to rewrite that labeling. And we are certainly not trying to avoid Regal versus Medtronic as the defense keeps arguing. Our motion is, is also to add the CUPPA claim in a third amended complaint. And we've waited to ask the court to permit us to add that CUPPA claim until the Supreme Court of Connecticut has entered its opinion in SOTA. So, Ms. Fleischman, at this point, let me just hit the pause button and let me see if Judge Katzman, why don't we start with Judge Katzman if he has any questions for you. Right. I don't know if Judge Katzman, if you can hear us. Yes, thank you, Judge Nardini. This is a case that could involve all sorts of complicated issues involving the question of preemption of state court law by the medical device amendments to the FDCA. And I'm wondering, however, whether there may be, how you would respond to this, that there may be an alternative ground to decide this case that doesn't get us into those complicated issues. Why couldn't we hold that the, or could we hold that the plaintiff's theory is not cognizable under the CUPPA and that this claim is thus impliedly preempted under Buckman? So, if you look at the CPLA, it contains an exclusivity provision that provides, and I'm quoting, that a product liability claim as provided, and this is with respect to other sections of the statute, may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability, and warranty for harm caused by a product. And that's under Connecticut state law. And I mean, you read Soto, as I understand it, to have created a broad exception from this exclusivity provision for personal injury claims based on wrongful marketing or advertising of a product. But it seems to me that Soto's holding it narrower than that, that the Connecticut Supreme Court merely held that a personal injury claim based on wrongful marketing or advertising of a non-defective product are not product liability claims in the first place, and thus not subject to the CPLA's exclusivity provision. And so, just to cut to the chase here, since your client's cut the theory sounds there to warn, this is therefore a claim arising from an injury caused by a defective product, so the CPLA exclusivity provision applies. So, I'm just wondering how you would respond to that. How would you respond? I'm gonna ask if it's okay to answer the second question first, the cut the question first. It was a long speech by me, you answer it anyway. On the cut the question, the issue is not a failure to warn question, it's a marketing issue. In our complaint, in our second amendment complaint, we start to lay this out, but in the proposed third amendment complaint, we deal with this in much more detail, that there was deceptive marketing and an outrageous marketing program in terms of the method in which the defendant, Bashulam and Bausch, was actually marketing this TrueLine lens to ophthalmologists and patients. Excuse me, I'm sorry, you have a minute left. Okay, I'm sorry. The cut the, okay, bottom line is that the cut the claim addresses that marketing, and as a function of that direct marketing to this patient and this doctor, that which was completely outrageous, completely uncultured and deceptive, that that marketing prompted the surgeries, the implants of these lenses, and then as a result of the implants in the lenses, she suffered these terrible injuries, this blindness injury, which is not, which is exactly analogous to the shooting at Sandy Hook. The question there was, the issue was that the sale of those, the gun, the AK, whatever it was, AK-47, was outrageous, and there was misrepresentation in the sale. If you bought a gun, you're gonna be Johnny Joe, but it's that, and as a result of that hype and that misrepresentation and that marketing fiasco, frankly, that was evil, these poor little kids were killed and injured, and these families devastated. So it's, that's the question. This is, this couple of claims is 100% not a failure to warn claim. The failure to warn claims are the CPLA claims, which we believe are parallel, and they don't have to be identical to the language of the federal court, which is what Judge Rudy misunderstood. So counsel, this is Judge Nardini. Let me inquire of Judge Lynch, because I think we're taking you beyond your initial seven minutes, but that's okay. Let me just ask whether Judge Lynch has any questions. I know you'd like to hold some time in rebuttal. Yes, I do, and my question is similar in some respects to Judge Katzmann's, only it relates to the CPLA claim. It's clear to me, I think, that Connecticut law allows a claim for post-purchase failure to warn, but is it clear that Connecticut law permits a claim for failure to warn a regulatory agency? And is there any case you can refer to in which any Connecticut court sustained such a claim? Well, under, unfortunately, no. Well, Annette, before you, before, I'm gonna give you, I appreciate that you gave me a straight answer and that you have a qualification, and I wanna hear the qualification, but before, I guess what the next question is gonna be is why shouldn't we, before we decide a preemption question, ask the Connecticut Supreme Court whether there is anything here to preempt? Because I'm mindful of what happened to the Ninth Circuit, which assumed that Arizona law was a certain way and then held no preemption, and you rely on that, and that may be a correct, you may be correct about the preemption, but then the Arizona Supreme Court said, but there is no such claim under state law, and I'm wondering why shouldn't we consult the Connecticut authorities who can tell us before we decide that Connecticut law is unconstitutional or something, why don't we ask them what Connecticut law actually is? So go ahead, then, and answer any way you want. Thank you. Well, I'm just gonna make a distinction. First of all, under the negligence claim that's set, you know, the value to warrant under negligence, I think, operates across the board and applies clearly under Connecticut law, because Connecticut law makes clear that when there's evidence a product was defective, the manufacturer or the seller has a duty to the purchaser or the consumers to advise them of this issue of danger. I mean, that's not different from, or in addition to the requirements of the CPLA, borrowing from the MDA. So there's no question that I think that the negligence claim is alive and well under the Connecticut, the CPLA 52572Q, which is the liability of the product seller due to lack of adequate warnings and instruction. Oh, but wait, now I'm puzzled, because I thought you weren't urging that the defendant should have notified consumers because that would be tantamount to changing the labeling. That would be the efficient way to tell the consumers, right? I thought you were saying, the way that you escaped that ruling of the district court was to say, no, we're not asking that the consumers be notified. We're asking that the FDA be notified. And we're saying that the failure to do that is what was negligent. Am I wrong about that? No, no, you're 100% right. Well, then, excuse me, then I'm just not sure, excuse me, then I'm not sure I understand, because there is a traditional learned intermediary doctrine that says you can notify the doctors. But some states have said, including Arizona, that there is no duty to warn a regulatory agency under that traditional tort doctrine. Well, that is exactly what Conklin says. But in Connecticut, what I was gonna say was that under 52572QD, a product seller may not be considered to have provided adequate warnings or instructions unless they were devised to communicate with the person best able to take or recommend precautions against the potential harm. In this instance, the only person that is best able is obviously the FDA with adverse event reporting. And then the FDA has to undertake its duty to let the community know. That is the only place that the manufacturer can go. And my last question is, apart from Connecticut, are you aware of any state Supreme Court that has held that there is a duty under state law to notify federal regulators in a situation like this? I think we cited to that, you know. Well, there are a couple of federal courts of appeals who assumed or proclaimed that state law provided such a remedy and then said it was not preempted. But they conspicuously did not, as far as I could see, cite specific decisions of the state courts, let alone refer questions to the state courts. Well, Ms. Leishman, this is Judge Ernie. Why don't you think about your answer, Ms. Leishman. Why don't you think about your answer to that? You have reserved three minutes for rebuttal, even though we've kept you over. So why don't you circle back to that and then you can respond to that when you come back. In the meantime, why don't we turn to counsel for the appellee, Mr. Scherker. Are you there? Yes, Your Honor. Okay, why don't you, you've got 10 minutes. So why don't you proceed? And again, we'll open with one minute and then we'll turn to questions from the panel as I indicated. Thank you, Your Honor. May it please the court, Elliot Scherker on behalf of Bausch and Lohm. Nothing in Connecticut law requires reports to regulatory agencies. The statute upon which the plaintiff relies has no such requirement. There is no Connecticut case law that imposes such a requirement. And the Connecticut District Court has now ruled twice that there is no such requirement in Connecticut law. If I might quote from the Norman decision, absent the specific reporting requirements of the FDCA, no Connecticut court would have imposed the duty to report adverse events to the FDA. The subsequent decision in Pratt announces the same holding. Plaintiffs cite no Connecticut law to the contrary. They've admitted this morning that there is no Connecticut law to the contrary, which means that they cannot plead a claim for violation of Connecticut law in connection with the claims set forth in the complaint. The same is true, I might add, of the post-market study basis, which is the underlying gravamen of a negligence claim. There is no duty under state law. There is no Connecticut case law or statute imposing such a duty. It arises only under the FDCA. And the claim is nothing more than a disguised claim of fraud on the FDA in an attempt to enforce the FDCA through a claim that's supposedly based on state law. As to the CPLA, so to modify- Mr. Shurker, I'm sorry, it's Judge Nardini. Let me hit the pause button, if I may. And let me ask, and again, I'll start with Judge Katzmann, whether he has any particular questions that he would like you to address. Thank you, Judge Nardini. I have one question.  would you concede that the plaintiff's allegations are not limited to the device's FDA-approved labeling and that the claim is therefore not expressly preempted? And if so, could you explain, please, why you think the claim is nevertheless impliedly preempted? Yes, Your Honor. The claim is impliedly preempted because it seeks to enforce the FDCA. The law is to avoid implied preemption, a plaintiff must be suing for conduct that violates the FDCA, but not because the conduct violates the FDCA. The claim must arise under state law based on conduct that traditionally would give rise to liability under state law, even if the FDCA had never been adopted. The case law is uniform on these principles. And with regard to post-approval claims, the failure to inform the FDA of adverse events is preempted unless there is an independent basis for the claim under state law and a plaintiff is not seeking to enforce the FDCA through state law. I'd add that the courts of appeals are uniform on this point of law, even with the differing results based on intuiting what state law might be, that the Eighth Circuit Medtronic decision, the Ninth Circuit Stengel decision, the Eleventh Circuit Mink decision, and most recently in our notice of supplemental authority under 20HA, the Tenth Circuit's Brooks decision, all those decisions hold that a claim must be based on a state law duty to comply with FDA imposed post-approval requirements. So the dispositive question is what I was addressing is whether there is any state law duty to report to the FDA, and there is no state law duty under Connecticut law. The Connecticut District Court has now held twice that there is no such duty under Connecticut law. Now, to answer Judge Lynch's question, the Connecticut Supreme Court does have authority to answer questions certified by this court, and we would have no objection, of course, if the court were inclined to do so, but we believe that the Connecticut District Court's decisions are soundly based and closely reasoned explications of Connecticut law and that the court can comfortably rest on those decisions. So that's the basis for our implied preemption argument, Your Honor. And as to the CPLA argument, it's important to note that SOTO is not a product defect claim. It's a claim of unlawful marketing and promotion of non-defective products, and I'd refer the court to 202 Atlantic 3rd at 284 to 295, and the exclusivity provision was inapplicable because the claim wasn't based on a defective product. If I could read, yes, Your Honor? I'm sorry. I think it was just me clevering my throat, but I appreciate your pausing just in case. Actually, let me take advantage of that inadvertent pause in the action, and Judge Katzman, did you have any further questions? I don't. Then let me turn this over to Judge Lynch. Judge Lynch, do you have any questions you'd like to pose? Yes, and also just one. Mr. Shurker, Ms. Fleischman cited subsection D of the warning provision of the Connecticut Products Liability Act. A product seller may not be considered to have provided adequate warnings unless they were devised to communicate with the person best able to take or recommend precautions, and she suggests that the person best able to take precautions and recommend precautions is none other than the FDA. Now, it didn't seem to me that was a frivolous argument. There are all kinds of arguments I can think of against it, but that's what it says, and with all due respect to the Connecticut federal district judges, who know more about Connecticut law than I do, certainly, they're not authoritative on what Connecticut law means. So why would we just, I mean, you said we'd be intuiting Connecticut law, but it seems to me we'd be intuiting Connecticut law either way. Why isn't it a plausible argument that that statute requires warnings or notices to the FDA? Your Honor, first of all, when I used the word intuiting, I was referring to the court of appeals cases to which Your Honor made reference in your question of my opponent. Oh, yes, exactly, exactly. But you were saying, and correctly so, that the circuits that have held no preemption first made a guess that there was a state law claim and then decided that it wasn't preempted. But I'm just saying, wouldn't we be guessing whatever we decided about Connecticut law in the absence of, or maybe I should just ask this question or define it this way. Do you have a case of a Connecticut appellate authority or indeed any Connecticut state court rejecting the claim that Ms. Fleischman makes about subsection D? No, sir, I don't. But the burden, of course, is on the pleading party to establish the claim under, to establish a basis for a claim under Connecticut law. But if I might go to subsection D, which was the first part of your question, I think subsection D has to be read in conformity with Connecticut common law, which adopts the learned intermediary doctrine as with the learned intermediary as the best person best suited to deal with warnings as to a product's potential downfalls or pitfalls. That is Connecticut law. And there's nothing to the contrary that imposes, that creates the FDA as some sort of super authority to which complaints or information must be made. So reading subsection D in conformity with Connecticut common law, it doesn't provide the basis that counsel would like to read into it. But again, we're not asking the court to intuit. And should the court wish to refer the question, certify the question to the Connecticut Supreme Court, we would understand that, of course, is well within the court's power and wouldn't have any objection. We don't propose that the Connecticut district courts were intuiting. They were simply saying what I've already said here today, which is there is nothing in Connecticut law that creates such a duty. And I think- Thank you, thank you. That does answer the question. I appreciate it. So to, thank you, your honor, to sum up. As pleaded, as pleaded, the claims are impliedly preempted in the absence of Connecticut law that authorizes Connecticut courts to enforce the FDCA. And the claim for leave to amend, the claim for leave to amend, the district court, without reaching the cutbook claim, ruled that it's simply a repackaged failure to warn claim because it essentially means, as pleaded in the proposed third amended complaint, referring the court specifically to pages 398 through 399 of the appendix, that different labeling- I'm sorry, Madam Clerk. I'm sorry, you have a minute left. Thank you. Thank you very much. That this is nothing more than a repackaged failure to warn claim that proposes that the warnings approved by the FDA are deficient. And of course, as a matter of express preemption under regal, plaintiff cannot bring a state law claim that requires warnings different from, or in addition to the FDA approved labeling. In conclusion, we request the court to affirm the district court's order. Thank you very much. Thank you very much, Mr. Shurker. And Ms. Fleischman, you have reserved, let's see, three minutes for rebuttal. So why don't we turn back to you? Okay. I have a few comments. I did not find any connected case specifically that addressed this, that there's an actual tort based on failure to warn the FDA or require reporting of problems. There's this basic tort that says you have to be accurate in the reporting that you do. In this whole concept of failure to report this information to the FDA and then to be able to hide behind that under the CPOA and then under the MVA seems implausible. Because what then results is that the citizens of the state of Connecticut have no recourse. And I don't think that was intended when Judge Catherine wrote the Second Circuit's decision in legal. I don't think that's what was intended when the Supreme Court wrote legal and said there's gotta be a parallel claim. And I don't think that's what was intended here. It should be intended here. And I don't think that when we interpret this law it should say, oh, there's no way to bring a claim for this conduct. The company, the manufacturer failed to report the adverse events and failed to follow up and do this conditional approval required study. And it was a post-market study. So they failed to do the things that the FDA said you must do if we approve this product at this point. And then now they get to escape any liability for the injuries they cause. That doesn't seem like the right outcome. It just seems implausible. It doesn't seem intended. It seems unjust. It seems unconscionable. So that's my first issue. Second issue is that Marjorie's doctors got their information from the FDA. There's no other place that they would've gotten information. You have a minute left. Okay, thank you very much. So Boucher's actual reporting or failure to report to the FDA would have changed the outcome because the company then would have the information available to the doctors and then doctors could make decisions. And in this instance, this doctor may not have chosen to actually even implant this device because the study was supposed to be conducted within six months of the releasing in 2013. And the adverse events were supposed to be recorded. They weren't reported. Study wasn't started for 2015, six months after the implant. And very shortly after the study was started, the company went back to the FDA to add these warnings which would have changed the outcome. So we have a direct causal link to the FDA's failure to act on what Dr. Lomb failed to give them. And we as a plaintiff can only say that it was Dr. Lomb's, okay, responsibility. So Ms. Fleischman, thank you very much. And Mr. Sherker, thanks to you as well. Very helpful oral arguments from both of you. We will take the case, we will reserve decision. So why don't we?